UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARIAN MEREDITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15CV1007 CDP |
| | ) | |
| ROBERT MCDONALD, Secretary, | ) | |
| Department of Veterans Affairs, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Marian Meredith works at the Department of Veterans Affairs (VA)
as a radiologic technologist specializing in ultrasounds. She brings this lawsuit
against the VA claiming that it discriminated against her in her employment on
account of her age and race, and in retaliation for engaging in protected activity.
She also claims that the VA subjected her to harassment and a hostile work
environment. The VA now moves for summary judgment on all of Meredith's
claims. Because the undisputed facts show that conduct of which Meredith
complains does not rise to the level of actionable discriminatory conduct, I will
grant the motion.

### Background

Plaintiff Marian Meredith is an African-American woman who was over
forty years of age at all times relevant to this lawsuit. She began working at the

VA in 1999 as a radiologic technologist in ultrasound, CT, and angiography but worked primarily in ultrasound. She continues to work at the VA, exclusively as an ultrasound technologist.

In March 2008, a new Siemens 64-slice CT scanner was installed at the VA. Siemens provided training on the equipment to permanent and temporary technologists whose primary modality was CT imaging. Amy Martinez, a white woman, was a temporary technologist who trained on the Siemens equipment. She had worked at the VA as a temp tech since 2005, but the VA hired her as a permanent employee in February 2009. Some longtime VA technologists, including Meredith, were not trained on the equipment.

In early 2009, the supervisor of Nuclear Medicine at the VA asked some technologists if they were interested in taking on the responsibilities of Special Imaging supervisor, a position which had recently become vacant. There was no increase in pay associated with these additional responsibilities. The position oversaw ultrasounds, CT, and angiography. After a number of technologists declined, Martinez was asked and she accepted. Meredith was not asked if she was interested in the position. Martinez, who was thirty-one years old, became acting supervisor on March 6, 2009. Meredith was fifty-six years old.

Meredith complained to her union of being passed over for the acting supervisor position and, in April 2009, she initiated contact with an EEO counselor

regarding the matter. She thereafter began experiencing unwelcome remarks and unpleasant conduct at work. She filed a formal complaint of discrimination on July 31, 2009, alleging race and age discrimination in relation to the acting supervisor position. She also claimed that she had been retaliated against for filing an EEO complaint. On November 25, 2009, Meredith amended her EEO complaint to include an additional claim relating to proposed disciplinary action.

Eighteen months after being appointed acting supervisor, which included supervisor training, Martinez applied for and was promoted to a permanent supervisory position. This permanent position included an increase in pay. Meredith did not apply for the permanent position because she did not have the required training.

Meredith pursued her claims of discrimination and retaliation through the EEO process and obtained a Final Agency Decision on March 5, 2013. Her appeal of the decision was denied on October 8, 2014, and her request for reconsideration was denied on March 27, 2015. She brought this lawsuit on June 25, 2015.

In this action, Meredith claims that she was subjected to adverse employment action on account of her age, in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.* (ADEA); on account of her race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* (Title VII); and in retaliation for engaging in

protected conduct, in violation of Title VII. She also claims that she was subjected to harassment and a hostile work environment on account of these factors, in violation of Title VII and the ADEA.

The VA moves for summary judgment, arguing that Meredith cannot make a prima facie case of discrimination on any of her claims and, further, that any action it took was based on legitimate nondiscriminatory reasons. I will grant the motion.

## Summary Judgment Standard

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). "There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson*, 643 F.3d at 1043.

Initially, the moving party must demonstrate the absence of an issue for trial. *Celotex,* 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in her pleadings or in general denials of the movant's assertions, but must instead come forward with specific facts showing that there is a genuine issue for trial. *Id.* at 324; *Torgerson,* 643 F.3d

- 4 -

at 1042. I must view the facts in the light most favorable to the nonmoving party, "but only 'if there is a genuine dispute as to those facts.'" *RSA 1 Ltd. P'ship v. Paramount Software Assocs., Inc.*, 793 F.3d 903, 906 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson*, 643 F.3d at 1042 (internal quotation marks and citations omitted).

## Evidence Before the Court on the Motion

At all times relevant to Meredith's complaint, Dr. Barbara Sterkel was Chief of Diagnostic Imaging Services at the VA and was Meredith's second-line supervisor. Bob Adams was the supervisor of Nuclear Medicine at the VA. He has never had any supervisory authority over Meredith in Radiology, but he sometimes helped the Radiology supervisor. When Martinez became acting supervisor of Special Imaging in March 2009, she became Meredith's immediate supervisor.

When the Special Imaging supervisor position became vacant in early 2009, Adams asked some VA technologists if they would be interested in taking on additional duties to cover the supervisor's position. Adams was advised that the problems that needed to be addressed in the department were CT-related problems, so he directed his inquiry to full-time CT technologists. Adams did not ask

Meredith if she was interested in volunteering for the supervisory position. He was aware that Meredith had performed some work in CT but that she primarily worked as an ultrasound technologist.

Three CT technologists declined Adams' offer to take on supervisory duties. Martinez accepted the offer. At the time, Martinez was a full-time CT technologist and had worked with the new Siemens CT. Meredith asserts that only two technologists were offered the acting supervisor position before the offer was extended to Martinez – Randy Karfs, a white ultrasound technologist; and Dennis Moynihan, a white CT technologist.[1] Meredith points to no admissible evidence to support this assertion. Meredith contends that she and James Love should have been offered the position, given that they had seniority over Moynihan and Martinez.

Love, an African-American CT technologist under the age of forty, testified at Meredith's EEOC hearing that he could not recall whether he was offered the position, but he was not interested in taking on the job. Karfs testified that he was not offered the position.[2]

Meredith initiated EEO contact in April 2009 and complained that she was

---

[1] Although Moynihan's exact age in March 2009 is unknown, it is undisputed that he was over forty years old. Karfs was fifty-seven years old.

[2] To support its motion, the VA submitted the transcripts of Meredith's December 2012 and January 2013 EEOC hearings, which I may consider as evidence. My consideration of these transcripts should not be construed as my affirmance or reversal of the EEOC's findings, however. Indeed, in my review of the issues in this case, I have not considered or relied on the EEOC's decisions.

not considered for the supervisory position because of her age and race. After making this complaint, Meredith began experiencing unwelcome remarks and was subject to unpleasant conduct and disciplinary action. While none of the remarks involved Meredith's age or race,[3] Meredith claims that the following conduct shows continued discrimination, constituted retaliation, and created a hostile work environment:

1) *Change in Tour of Duty – July 9, 2009*

Meredith primarily worked at the VA's St. Louis location, and her tour of duty, *i.e.*, her shift, was from 7:00 a.m. to 3:30 p.m.

Beginning in 2000 or 2001, ultrasound services were offered approximately once a month at the Jefferson Barracks (JB) location. Meredith volunteered to be the ultrasound technologist at JB because no one else wanted this assignment. Her hours at JB were from 7:00 a.m. to whenever she finished, which was usually around noon. She would then take leave for the remainder of the day. The frequency of services at JB eventually increased and, by 2009, Meredith worked at the JB location every Thursday.

Beginning July 9, 2009, the JB assignment was rotated through three ultrasound technologists in order to include a new technologist who had recently

---

[3] Deft's Exh. B, Meredith EEO testimony at pp. 9-10.

begun working at the VA.[4]  This resulted in Meredith working at the JB location every third Thursday instead of every Thursday as before.  When Meredith worked at the St. Louis VA on Thursdays, her shift was from 8:00 a.m. to 4:30 p.m.

2)    *Martinez Confrontation – July 20, 2009*

When Meredith was leaving the VA at the end of her shift on July 20, 2009, she noticed an open scanning room.  She went in to turn off the lights and close down the room.  Martinez and Dan McCallum, a quality assurance specialist, were in the room, performing a CT scan on a patient.  When Meredith came into the room, Martinez told her that she would be on call that evening beginning at 5:00 p.m. instead of at 8:00 p.m.  Meredith questioned why she had not been told earlier about this schedule change and asked if she would have to relieve Martinez.  Meredith admits that she and Martinez then "went back and forth" after which McCallum intervened and told them to calm down given that a patient was in the room.[5]  Martinez sat down and resumed scanning the patient.  Meredith continued to question Martinez regarding what she was expected to do, but Martinez did not respond.  McCallum then told Meredith to leave the room.

Although Meredith left the scanning room, she remained at the VA and continued to work because another patient was scheduled to be scanned.  After Meredith processed the patient, Martinez took the patient to the scanning room to

---

[4] This new technologist, Nancy Lloyd, was a fifty-one-year-old white woman.
[5] Deft's Exh. A, Meredith depo. at pp. 60-61.

continue in the preparation and to perform the scan. After Martinez completed the scan, Meredith left the VA and went home.

Since Meredith exceeded her scheduled shift by over two hours, she put in for compensatory time the following day. Both Martinez and Dr. Sterkel denied the request. An administrator eventually approved Meredith's request.

On August 5, 2009, Meredith was informed that a reprimand had been proposed for her disrespectful conduct toward Martinez.

3)    *Resident Confrontation – July 31, 2009*

While on call on July 31, 2009, Meredith received a telephone call at home from a resident physician regarding a need for Meredith to come in to perform a CT scan. Meredith admittedly "got a little smart" with the resident during this telephone conversation.[6] Meredith then went into work and performed the scan.

After completing the scan, the resident with whom Meredith had spoken on the phone came into the room and asked Meredith why she spoke the way she did on the telephone. The resident became angry with Meredith, but Meredith did not argue back because of her previous experience with Martinez. After the resident left, Meredith loaded the scans into the network to send to the requesting physician, but she was upset while doing so. Meredith received error messages during this process because the images were improperly loaded. Meredith called

---

[6] Deft's Exh. A, Meredith depo. at p. 78.

the requesting physician and explained that she was having problems sending the images, but the physician stated that she could see them. Because the physician could see the images, Meredith thought the initial upload was successful. She then finished case editing the images and loaded them to another part of the network.

4) *Proposed Reprimand – August 21, 2009*

On August 21, 2009, Dr. Sterkel issued a proposed reprimand to Meredith based on three charges: 1) disrespectful conduct in relation to the July 20 and July 31 incidents; 2) failure to follow policy and proper procedure in relation to the July 31 CT scanning and case editing of images; and 3) failure to carry out and willful resistance to a proper order in relation to her failure to timely complete CT reconstructions training.[7]

On September 15, 2009, Meredith received a reprimand on these charges.

5) *CT Room Confrontation – October 2, 2009*

On October 2, 2009, Meredith was part of team performing CT scans. For one of the scheduled scans, she relinquished her seat to another technologist because she was not trained to perform the particular type of scan. She then left the scanning room for a period of time. Upon her return, another scan was scheduled for which she was not trained, so she asked for and was given CT

---

[7] In a Statement dated July 9, 2009, Meredith and other technologists were informed that they needed to complete post-processing for CT reconstructions training by August 10, 2009. Meredith refused to sign the Statement. (Pltf's Exh. 12; Deft's Exh. R.)

reconstructions to practice on.  While she was working on reconstructions, she was told to return and run the next scan because it was a type that she was trained to do.

When Meredith returned to the scanning room to perform the scan, the seated technologist forcibly slid her chair over to Meredith – almost striking her – and said that she, and not Meredith, would be running the scan.  Meredith left the room and reported the incident to Dr. Sterkel.  Dr. Sterkel and Meredith reentered the scanning room, after which Dr. Sterkel spoke to Meredith in a rude and condescending manner.  These condescending remarks were made to Meredith in front of the other technologists and Martinez, who had also come into the room. Surprised that Dr. Sterkel said nothing to the technologist who almost struck her with her chair, Meredith stated that it appeared that black technologists were subject to different rules than white technologists.  Meredith then told Dr. Sterkel that she did not feel well, upon which Dr. Sterkel told her to leave.  Meredith went to another room and began to write an incident report on the matter, but Dr. Sterkel came in and continued to tell her to leave.

6)    *Proposed Suspension – October 27, 2009*

On October 27, 2009, Dr. Sterkel issued a proposed three-day suspension to Meredith based on three charges:  1) endangering the safety of others on October 5,

2009, through carelessness or negligence[8]; 2) creating a disruptive workplace, in relation to the October 2 incident; and 3) creating a divisive and antagonistic work atmosphere, in relation to the October 2 incident. Dr. Sterkel rescinded this proposed suspension on January 12, 2010.

On January 14, 2010, Dr. Sterkel issued a proposed reprimand for the conduct charged in the October 27 proposed suspension. Additional conduct from October 5 was also charged, and specifically, that Meredith would not cooperate to insure patient safety by verifying that the proper test was being performed on the patient. Dr. Sterkel rescinded this proposed reprimand on February 2, 2010.

Prior to filing her EEO complaint, Meredith had never been reprimanded for her performance at the VA. After February 2, 2010, Meredith has not been subject to any reprimands or suspensions for her performance at the VA.

7)    *Other Instances of Harassment/Hostile Work Environment*

In addition to the above discrete instances of alleged discrimination and harassment, Meredith contends that she was subjected to harassment in October 2008 when VA management sought input from fellow employees regarding her membership on the VA's Professional Standards Board.[9] Some employees indicated that they wished for her to be removed from the board. Meredith was not

---

[8] During CT training on October 5, 2009, Meredith failed to give a ten-second notice to another technologist to exit the room prior to scanning. The technologist had previously exited the room, and Meredith was not aware that she had returned. (Deft's Exh. A, Meredith depo. at p. 136.)
[9] The board's duties included reviewing applications and making recommendations with respect to the promotion and boarding of technologists. (Deft's Exh. A, Meredith depo. at p. 155.)

removed at that time but was removed in October 2009 after receiving the September 15 reprimand.

On September 9, 2009, Meredith questioned Sylvia Ivy, Dr. Sterkel's secretary, regarding missing paperwork that an ultrasound student was supposed to have before testing. According to Meredith, Ivy did not want to be bothered, but Meredith kept asking her about the paperwork. Ivy became angry and yelled at Meredith and then went into her office and slammed the door. This occurred in a hallway in front of patients and other employees.

## Discussion

1. <u>Race Discrimination</u>

    A. *Failure to Train for Supervisory Position*

Meredith claims that she was not considered for the position of acting supervisor on account of her race and thus was denied the opportunity to train for a permanent supervisor's position, which resulted in lost opportunity for career advancement and future salary increases.

A claim of unlawful race discrimination may be established through direct or indirect evidence. *Putman v. Unity Health Sys.,* 348 F.3d 732, 734 (8th Cir. 2003). Because Meredith's claim is not based on any direct evidence of discrimination, I must apply the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Russell v. Men's Wearhouse, Inc.*, 170 F.3d

1156, 1157 (8th Cir. 1999) (per curiam).  Therefore, in order to survive the VA's

motion for summary judgment, Meredith must first establish a prima facie case of

discrimination.  If she is able to do so, the VA may rebut the prima facie case by

articulating a nondiscriminatory reason for its action.  Meredith must then show

that the VA's proffered reason is merely pretext for discrimination.  At all times,

Meredith bears the ultimate burden of proving that she was unlawfully

discriminated against.  *Rose-Maston v. NME Hosp., Inc.,* 133 F.3d 1104, 1107-08

(8th Cir. 1998).

In the circumstances of this case, Meredith can establish a prima facie case

of race discrimination on this claim if she can show:  1) she is a member of a

protected class; 2) she was qualified; 3) she suffered an adverse employment

action; and 4) she can provide facts that give rise to an inference of unlawful

discrimination.  *Robinson v. American Red Cross*, 753 F.3d 749, 754 (8th Cir.

2014).  In its argument that Meredith cannot establish a prima facie case, the VA

argues only that Meredith did not suffer an adverse employment action given that

her responsibilities, salary, and benefits were not affected by her failure to be

appointed as acting supervisor.  This argument misses the point.  Meredith

contends that by being denied the opportunity to serve as acting supervisor, she

was denied training that would have eventually led to career advancement as a

permanent supervisor with accompanying increases in pay.  Discriminatory failure

to train that results in a loss of future career prospects is itself an adverse employment action. *Id.* at 755. Because the VA provides no other basis upon which to find that Meredith cannot make a prima facie case, I will assume without deciding that she has done so.

The VA, however, has articulated a legitimate, nondiscriminatory reason for its action, and Meredith has failed to show this reason to be pretext for discrimination. Specifically, the undisputed evidence shows that the VA sought out persons who worked full-time as CT technologists to fill the position of acting supervisor. Testimony adduced at the EEOC hearing shows the imaging department to have had problems in the CT area, which was why the sitting supervisor was asked to step down. Because of these problems, the VA looked to those who had extensive CT experience to take on some supervisory responsibilities. While Meredith had some experience as a CT technologist, her primary imaging modality was ultrasound. Extending job responsibilities to employees more qualified to fill a specific need is a legitimate, nondiscriminatory reason for the VA's action here. *Rose-Maston*, 133 F.3d at 1110; c*f. Torgerson,* 643 F.3d at 1047 (complainants lacked in qualifications when compared to higher ranking candidates).

Although Meredith does not quarrel with the VA's position that Martinez had more CT experience, she argues that the VA's contention that it sought

persons with this experience is pretext for discrimination. To support this argument, Meredith claims that the VA offered the position to Randy Karfs, who is white and an ultrasound technologist; and failed to offer it to James Love, who is black and a CT technologist. Contrary to Meredith's assertion, however, Karfs testified at the EEOC hearing that he was not offered the position and indeed was not qualified for the position given that he was an ultrasound technologist. To the extent Meredith points to the testimony of Sam Briley, who testified that he overheard Karfs being offered the position,[10] Meredith cannot rely on hearsay statements to defeat summary judgment. *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923-24 (8th Cir. 2004). *See also Crews v. Monarch Fire Prot. Dist.*, 771 F.3d 1085, 1092 (8th Cir. 2014) ("At summary judgment, the requisite 'genuine dispute' must appear in admissible evidence.").[11]

With respect to James Love, Bob Adams testified at the EEOC hearing that he talked to Love about taking the position but that Love was not interested in it. Love himself testified that, while he could not recall whether or not he was offered the position, he nevertheless was not interested. Meredith offers no evidence to support her bare assertion that Love was not offered the position. Unsupported and speculative allegations are insufficient to defeat summary judgment. *See Moody v.*

---

[10] *See* Deft's Exh. L, 1/18/2013 EEO trans., vol. II, at p. 253.
[11] The VA challenges Meredith's reliance on this inadmissible hearsay. (ECF #27 at p. 7.) *See* Fed. R. Civ. P. 56(c)(2).

*St. Charles Cnty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (to withstand summary judgment, plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy); *Bloom v. Metro Heart Grp. of St. Louis, Inc.*, 440 F.3d 1025, 1028 (8th Cir. 2006) (speculation and conjecture are insufficient to defeat summary judgment).

Accordingly, Meredith has failed to show that the VA's legitimate, nondiscriminatory reason in not offering her the acting supervisor position was pretext for race discrimination. The VA is therefore entitled to summary judgment on this claim.

B.     *Other Discreet Instances*

To the extent Meredith alleges that she was subjected to other discreet instances of discrimination as set out above, the VA argues that Meredith cannot make a prima facie case of discrimination in these instances given that she did not suffer any adverse employment action. The VA's argument is well taken.

"An adverse employment action is defined as a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728

F.3d 800, 804 (8th Cir. 2013).  Minor changes in working conditions with no reduction in pay or benefits do not constitute adverse employment actions.  *Jones v. Fitzgerald*, 285 F.3d 705, 713 (8th Cir. 2002).  Nor does disrespect by supervisors and coworkers.  *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 969 (8th Cir. 1999).  Here, the minor change in Meredith's work location and tour of duty on Thursdays and her verbal altercations with Martinez, the resident physician, and her coworker produced no materially significant disadvantage to the terms of her employment.  Meredith did not experience any cut in pay or benefits, nor was subjected to a change in job responsibilities.  Nor were any future career prospects or pay negatively affected by these instances.  Accordingly, they do not rise to the level of adverse employment actions.  *Jackman*, 728 F.3d at 804.

Further, "[f]ormal criticisms or reprimands that are not accompanied by additional disciplinary action such as a negative change in grade, salary or other benefits, do not constitute adverse employment actions."  *Donnelly v. St. John's Mercy Med. Ctr.*, 635 F. Supp. 2d 970, 993 (E.D. Mo. 2009) (citing *Elnashar v. Speedway SuperAmerica, LLC,* 484 F.3d 1046, 1058 (8th Cir. 2007); *Higgins v. Gonzales,* 481 F.3d 578, 587 (8th Cir. 2007)).  Here, the proposed reprimands and suspension, and indeed the formal reprimand issued in September 2009, did not result in tangible changes in the terms or conditions of Meredith's work.  Therefore, they do not constitute adverse employment actions for purposes of her

claims of discrimination. *See Elnashar,* 484 F.3d at 1058 ("A reprimand is an adverse employment action only when the employer uses it as a basis for changing the terms or conditions of the employee's job for the worse.").

Accordingly, because Meredith cannot establish a prima facie case of discrimination on these claims of wrongful conduct, the VA is entitled to summary judgment on the claims.

2.    Age Disccrimination

Meredith's claims based on age discrimination fail for similar reasons.

A.    *Failure to Train for Supervisory Position*

The ADEA prohibits an employer from discriminating on the basis of age if that person is over forty years old.  29 U.S.C. §§ 623(a), 631(a); *Chambers v. Metropolitan Prop. & Cas. Ins. Co.*, 351 F.3d 848, 855 (8th Cir. 2003).  A claim of unlawful age discrimination may be established through direct or indirect evidence. *Bearden v. International Paper Co.*, 529 F.3d 828, 830 (8th Cir. 2008).  Meredith does not proffer any direct evidence of adverse employment action taken on account of her age.  Accordingly, because any evidence of age discrimination would be indirect, I must apply the *McDonnell Douglas* burden-shifting analysis. *See Riley v. Lance, Inc.*, 518 F.3d 996, 1000 (8th Cir.  2008).

To establish a prima facie case of age discrimination in this case, Meredith must show that she:  1) was at least forty years old; 2) suffered an adverse

employment action; 3) was meeting her employer's legitimate expectations at the time of the adverse employment action; and 4) was passed over for someone substantially younger. *Gibson v. American Greetings Corp.,* 670 F.3d 844, 856 (8th Cir. 2012). Once Meredith establishes a prima facie case, the burden shifts to the VA to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the VA provides such a reason, the burden returns to Meredith to prove the reason to be mere pretext for discrimination. *Id.* "Furthermore, to succeed in proving age discrimination, a plaintiff must show, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Id.* (internal quotation marks and citation omitted).

Again, assuming Meredith presented sufficient evidence to make out a prima facie case of age discrimination, she has failed to present adequate proof to overcome VA's proffered legitimate, nondiscriminatory reason for its employment action – offering the acting supervisor position to only full-time CT technologists because of the problems in the CT department. "When an employer articulates a nondiscriminatory reason for an [employment action,] the factual inquiry proceeds to a new level of specificity." *Gibson*, 670 F.3d at 856 (internal quotation marks and citation omitted) (alteration in *Gibson*). "The showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for [an employment action]. A plaintiff must also demonstrate

that the circumstances permit a reasonable inference of discriminatory animus."
*Id.* (internal quotation marks and citation omitted) (alteration in *Gibson*).

Meredith generally claims that by being denied the opportunity to become acting supervisor, she was denied the opportunity to train for the permanent supervisor position – thereby limiting her chances for a promotion – while the acting supervisor position was offered to a younger person with less seniority. This general allegation, with nothing more, is not "sufficient, specific evidence of disparate treatment to survive summary judgment." *Anderson v. Durham D & M, L.L.C.,* 606 F.3d 513, 524 (8th Cir. 2010). *See also Bearden*, 529 F.3d at 832 (plaintiff's asserted belief that she was replaced by younger employee was insufficient to establish inference of age discrimination). This is especially true here, where Meredith avers that other persons whom she believes were offered the position – but declined – were likewise within the protected class, that is, they were over forty years of age and not substantially younger than she. *Cf. Haigh v. Gelita USA, Inc.,* 632 F.3d 464, 468 (8th Cir. 2011) (no evidence of discriminatory attitude toward age when employer hired persons well above ADEA's protected age). It is unlikely that the VA would offer the position to an older employee and then discriminate on the basis of age. "[S]uch evidence creates a presumption against discrimination." *Id.* at 470 (internal quotation marks and citation omitted).

Accordingly, Meredith has failed to show that the VA's legitimate, non-

discriminatory reason in not offering her the acting supervisor position was pretext for discrimination based on her age. The VA is therefore entitled to summary judgment on this claim.

B.    *Other Discreet Instances*

The VA claims that, as with Meredith's race discrimination claims, Meredith cannot show that she suffered an adverse employment action with respect to the other instances of alleged discrimination, and thus cannot establish a prima facie case of age discrimination with respect to these claims.

An "adverse employment action" is defined the same under the ADEA as it is under Title VII, that is, "a tangible change in working conditions that produces a material employment disadvantage." *Thomas v. Corwin*, 483 F.3d 516, 528 (8th Cir. 2007) (internal quotation marks and citation omitted). As demonstrated above, the actions of which Meredith complains did not result in any adverse employment actions for purposes of her claims of discrimination. Accordingly, the VA is entitled to summary judgment on these claims of age discrimination as well.

3.    Retaliation

Meredith claims that the negative conduct she experienced was in retaliation for her engaging in protected activity, and specifically, for filing an EEO complaint and pursuing a charge of discrimination against the VA in relation to the selection of Martinez as acting supervisor. The VA argues that Meredith cannot establish a

prima facie case of retaliation. For the following reasons, the VA's argument is well taken.

A claim of retaliation is properly analyzed under the *McDonnell Douglas* framework. *Fercello v. County of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010). Accordingly, Meredith has the initial burden of establishing a prima facie case of retaliation. *Id.* To establish a prima facie case, Meredith must show: 1) that she engaged in protected conduct; 2) that she suffered materially adverse employment action, action that would deter a reasonable employee from making a charge of discrimination; and 3) that the materially adverse action was causally linked to the protected conduct. *Id.* at 1077-78; *see also Weger v. City of Ladue*, 500 F.3d 710, 726 (8th Cir. 2007) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). The VA contends that the conduct of which Meredith complains here does not rise to a level to be considered materially adverse, nor can it be shown to be causally linked to Meredith's charge of discrimination.

For alleged retaliatory conduct to be "materially adverse," Meredith must show that the action would deter a reasonable employee from making or supporting a charge of discrimination. *White*, 548 U.S. at 68; *Fercello*, 612 F.3d at 1077-78. Petty slights, minor annoyances, and simple lack of good manners, which often take place at work and which all employees experience, will not create this level of deterrence and thus do not constitute materially adverse actions.

*White*, 548 U.S. at 68.  Employees may have to withstand colleagues who do not like them, are rude, and may be generally disagreeable people.  "However, [a] court's obligation is not to mandate that certain individuals work on their interpersonal skills and cease engaging in inter-departmental personality conflicts." *Somoza v. University of Denver*, 513 F.3d 1206, 1218 (10th Cir. 2008) (*cited approvingly in Recio v. Creighton Univ.*, 521 F.3d 934, 941 (8th Cir. 2008)).  "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *White*, 548 U.S. at 67.  Without evidence of harm, instances of unpleasant and disagreeable conduct cannot constitute materially adverse action under *White*.  *Devin v. Schwan's Home Serv., Inc.*, 491 F.3d 778, 786 (8th Cir. 2007), *abrogated on other grounds by Torgerson*, 643 F.3d 1031 (8th Cir. 2011).

Meredith has failed to demonstrate that any harm she experienced from the incidents described above was so significant that a reasonable person would be deterred from engaging in protected activity.  *See Devin*, 491 F.3d at 786.  Indeed, the undisputed evidence shows the contrary.  Despite the disagreeable conduct of which Meredith complains, she nevertheless continued to pursue her claims of alleged discrimination through final agency action, including appellate disposition. She even amended her EEO complaint during the course of her pursuit and obtained some favorable results, including rescission of both a proposed reprimand

and proposed suspension.  And she has experienced no disciplinary action since.

To the extent Meredith complains of conduct that occurred prior to her initiating EEO contact in April 2009, this conduct cannot be considered causally linked to Meredith's protected activity.  *See Devin,* 491 F.3d at 787; *see also Stewart v. Independent Sch. Dist. No. 196*, 481 F.3d 1034, 1046 (8th Cir. 2007) (no allegedly adverse actions that preceded complaint to the EEO could have been in retaliation for the later-filed complaint).

Finally, Meredith's claim of retaliation is weakened by her own admitted antagonistic behavior related to the claimed unpleasant encounters, namely, her continuing to question Martinez on July 20, 2009, after being told to stop; "getting smart" with the resident physician on July 31, 2009, when asked to come in to perform a CT scan; and continuing to question Ivy in front of patients and employees on September 9, 2009, after Ivy made it apparent that she did not want to be bothered.  *Cf. Fercello*, 612 F.3d at 1081 (plaintiff's argument that unwelcome conduct was retaliatory in nature was "particularly weak" given evidence that plaintiff herself had conflicts with coworkers and supervisors).

The undisputed evidence shows that the conduct of which Meredith complains did not produce injury or harm so significant that it would deter a reasonable employee from making or supporting a charge of discrimination. Therefore, the complained-of conduct was not materially adverse, and Meredith

has failed to establish a prima facie case of retaliation. The VA is therefore entitled to summary judgment on Meredith's claim of unlawful retaliation.

4.     Hostile Work Environment

Finally, Meredith claims that the VA's discriminatory animus toward her resulted in harassment and a hostile work environment.

To establish a claim of harassment or hostile work environment, Meredith must show:  1) that she belongs to a protected group; 2) that she was subject to unwelcome harassment; 3) a causal nexus exists between the harassment and her protected group status; and 4) the harassment affected a term, condition, or privilege of employment. *Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 634 (8th Cir. 2016). The conduct must have been severe or pervasive enough to create an objectively hostile or abusive work environment. *Hesse v. Avis Rent A Car Sys., Inc.*, 394 F.3d 624, 629 (8th Cir. 2005). "The critical issue is whether members of [a protected group] are subjected to unfavorable employment conditions to which members of the other [group] are not." *Id.* at 630. "Generalized harassment in the workplace is not illegal[.]" *Id.*; *see also Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1158-59 (8th Cir. 1999), *abrogated on other grounds by Torgerson*, 643 F.3d 1031 (8th Cir. 2011).

The VA argues that it is entitled to judgment as a matter of law on this claim

given that Meredith cannot show that a term, condition, or privilege of her employment was affected by the claimed instances of workplace harassment, or that the harassment was causally linked to her protected status. This argument is well taken.

Meredith cannot show that the alleged harassment was on account of her age, race, or prior EEO conduct. Although she has identified "numerous incidents of friction between [herself] and [her] coworkers," her claim of hostile work environment fails because she has provided no evidence that the workplace friction was because of her protected status in any group. *See Wallin v. Minnesota Dep't of Corr.*, 153 F.3d 681, 688 (8th Cir. 1998).

Nor has Meredith shown that the harassment affected a term, condition, or privilege of her employment. In making this determination, I must consider the totality of the circumstances, including the frequency and severity of the conduct, whether it was physically threatening or humiliating, and whether it unreasonably interfered with Meredith's job performance. *Sellers v. Deere & Co.*, 791 F.3d 938, 945 (8th Cir. 2015). In this case, Meredith has identified less than ten instances of challenged conduct that occurred over the course of one year. Although the majority of these instances occurred within a four-month period – from July to October 2009 – the alleged conduct was not so severe that it unreasonably interfered with Meredith's job performance. While Meredith complains that some

condescending remarks were humiliating because they were made in front of patients and other employees, she has not shown them to be so extreme that they altered her working conditions, or that they demonstrated anything more than mere rudeness. *See Blomker v. Jewell,* 831 F.3d 1051, 1057 (8th Cir. 2016). *See also Devin,* 491 F.3d at 788 (finding allegations "amount[ed] to a frustrating work environment rather than an objectively hostile work environment."); *Breeding*, 164 F.3d at 1159 (concluding that unfair criticism and being yelled at did not amount to actionable harassment). To the extent Meredith's coworker aggressively shoved her chair toward Meredith in July 2009, this isolated physical incident was not so extreme that it unreasonably interfered with Meredith's work performance. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998). "'More than a few isolated incidents are required,' and the alleged harassment must be 'so intimidating, offensive, or hostile that it poisoned the work environment.'" *Blomker*, 831 F.3d at 1057 (quoting *Scusa*, 181 F.3d at 967). There is no evidence of such a poisoned work environment here.

There is no actionable claim for harassment or hostile work environment where, as here, the evidence shows the complained-of conduct to be based on inter-departmental politics and personality conflicts rather than on discriminatory animus. *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 991 (8th Cir. 2003). While Meredith has shown why she perceived her work environment to be

unpleasant on occasion, she has not shown that any instances of harassment were related to her age, race, or prior EEO conduct. Nor has she shown that this workplace conduct affected a term, condition, or privilege of her employment. Accordingly, the VA is entitled to summary judgment on this claim.

## Conclusion

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motion for summary judgment filed by defendant Department of Veterans Affairs [20] is **GRANTED.**

A separate Judgment is entered this date in accordance with this Memorandum and Order.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 10th day of November, 2016.